# EXHIBIT "1"

# COMPLAINT

# COMPLAINT

# EXHIBIT "1"

Electronically Filed
4/27/2022 9:29 AM
Steven D. Grierson
CLERK OF THE COURT

**COMJD**
Christian Gabroy (#8805)
Kaine Messer (#14240)
GABROY | MESSER
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
Tel:   (702) 259-7777
Fax:   (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff*

CASE NO: A-22-851726-C
Department 19

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| GLORIA ANDERSON, an individual;<br><br>                Plaintiff,<br>vs.<br><br>COX COMMUNICATIONS LAS VEGAS, INC., a foreign corporation; DOES I through X; and ROE Corporations XI through XX, inclusive;<br><br>                Defendants. | Case No.<br>Dept.:<br><br><br><br>**COMPLAINT WITH JURY DEMAND** |

## COMPLAINT WITH JURY DEMAND

COMES NOW Plaintiff Gloria Anderson ("Plaintiff" or "Anderson") by and through her counsel of record, Christian Gabroy, Esq. and Kaine Messer, Esq. of Gabroy | Messer and hereby alleges and complains of Defendant Cox Communications Las Vegas, Inc. ("Defendant" or "Cox") as follows:

## VENUE AND JURISDICTION

1.  This is a civil action for damages under state law and to secure the protection of and to redress deprivation of rights under these laws.

2.  This Court has jurisdiction based upon 42 U.S.C. § 12101 *et seq.* and Nevada state law.

3.  Jurisdiction and venue are also based on 42 U.S.C. § 12101 *et seq.* and Plaintiff's claims under Nevada law.

4. All alleged unlawful employment actions occurred in this judicial district.

5. Plaintiff demands a jury trial on all issues triable by jury herein.

## PARTIES

6. Plaintiff, at all times relevant, is an individual residing in the state of Nevada.

7. Plaintiff, at all times relevant, was an employee of Defendant.

8. At all times relevant, Cox Communications Las Vegas Inc. was Plaintiff's "employer" as that term is defined in 42 U.S.C. § 12111.

9. Plaintiff is informed, believes, and thereon alleges that at all times relevant, Defendant was a foreign corporation listed with the Nevada Secretary of State.

10. Plaintiff is informed, believes, and thereupon alleges that at all times relevant, Defendant was doing business in Nevada where the unlawful employment practices and wrongful actions complained herein occurred.

11. The true names and capacities, whether individual, corporate, associate or otherwise of other Defendants hereinafter designated as Does I-X and Roe Corporations XI-XX, inclusive, who are in some manner responsible for the injuries described herein, and who were, upon information and belief, Plaintiff's "employer" is unknown to Plaintiff at this time who therefore sues said Defendants by such fictitious names and will seek leave of the Court to amend this Complaint to show their true names and capacities when ascertained.

## PROCEDURAL REQUIREMENTS

12. Plaintiff has satisfied all administrative requirements necessary to maintain this lawsuit.

13. Plaintiff has satisfied all jurisdictional requirements necessary to maintain this lawsuit.

14. On or about April 5, 2017, Plaintiff timely filed her charge of discrimination with the Nevada Equal Rights Commission ("NERC"). A true and correct copy of Plaintiff's charge of discrimination is attached hereto as Exhibit I. Such allegations of Exhibit I are hereby incorporated herein this Complaint.

1  15. On or about December 21, 2021, NERC issued a Probable Cause
2  determination "for disability discrimination, specifically a failure to accommodate." *See* a true
3  and correct copy of the NERC determination attached hereto as Exhibit II. Such findings of
4  Exhibit II are hereby incorporated herein this Complaint.

5  16. On or about January 28, 2022, NERC issued Plaintiff a Right-to-Sue Notice.
6  *See* a true and correct copy of Plaintiff's right to sue attached hereto as Exhibit III.

## FACTUAL ALLEGATIONS

8  17. Upon information and belief, Defendant represents to the general public that
9  it is "committed to providing accessible products and services for customers with
10  disabilities."

11  18. Upon information and belief, Defendant represents to the general public that
12  its "commitment to diversity and inclusion ensures the perspectives, needs and priorities
13  of our people, customers, suppliers and communities are reflected in our company's
14  vision."

15  19. Anderson legally came to the United States from Honduras in or around
16  1989.

17  20. Anderson is a United States Citizen, married, and has two sons.

18  21. One of Anderson's sons is currently serving in the United States Air Force.

19  22. On or about November 28, 1998, Anderson was hired by Defendant.

20  23. In or around 2007, Anderson was promoted to Indirect Account Manager.

21  24. As part of Anderson's duties, she was an ambassador for Defendant at
22  approximately ninety (90) events per year.

23  25. During her employment, Anderson developed rheumatoid arthritis that made
24  it difficult to lift objects over ten (10) pounds.

25  26. In 2013, Anderson informed Defendant about her serious medical condition.

26  27. Anderson took short term disability leave from October 2016 to January 3,
27  2017.

28. On or about December 28, 2016, Anderson's doctor sent a "return to work" note to Defendant.

29. Such note stated that Anderson could return to work on January 3, 2017.

30. Such note also stated that Anderson could not lift more than 10 pounds.

31. Prior to returning to work, Anderson contacted Defendant to ensure it received the letter from Anderson's doctor.

32. Defendant confirmed it received Anderson's doctor's note and approved Anderson to return to work on January 3, 2017.

33. On January 3, 2017, Anderson attempted to return to work but was not allowed in the administrative entrance.

34. Anderson was locked outside for an hour until her supervisor came into work and gave her entry.

35. Once in the building, Anderson was denied access to Defendant's network.

36. Anderson was told by IT that only Defendant's Human Resources department ("HR") or her supervisor could allow her to gain access to the network.

37. Anderson went out to lunch with her team to catch up on what she had missed while on medical leave.

38. While out to lunch, Anderson's supervisor called and asked her to return to the office.

39. Upon returning to the office, Anderson was informed to collect her items and head to the HR office.

40. HR asked Anderson to clarify whether the ten (10) pound restriction was temporary or permanent.

41. Anderson responded that she was unsure, and suggested Defendant contact Anderson's doctor.

42. Defendant then told Anderson she was unable to return to work due to the restriction.

43. Defendant did not offer Anderson any accommodations.

44. Anderson attempted to find other positions within Defendant's company.

45. Anderson formally applied and interviewed for several positions within Defendant's company between January and March 2017.

46. The positions paid approximately $20,000 less than Anderson's former position.

47. Despite being qualified, Anderson was not hired for any of those positions.

48. Around this time, Anderson was informed that her condition required long-term disability.

49. Anderson applied for several more positions with Defendant in September 2017.

50. Anderson was not hired for any of those positions.

51. On or around December 15, 2017, Anderson was terminated by Defendant.

52. As discussed herein, following its investigation into Anderson's allegations, NERC issued a probable cause determination "for disability discrimination, specifically a failure to accommodate." *See* Exhibit II.

53. NERC found that Defendant "failed to adhere to an EEO environment." *Id.*

54. NERC found that "at the relevant time period, there was no evidence requiring the lifting of objects [ten or more pounds] for the Indirect Account Manager job description." *Id.*

55. NERC found that Defendant "requiring [Anderson] to apply for positions she was qualified for, only to deny her application with little to no regard of accommodating the lifting requirement in her current positions that was not listed as an essential duty/requirement was a failed accommodation attempt." *Id.*

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12112 / NRS 613.310**

56. Anderson realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

57. At all times relevant, Anderson was a qualified individual under the Americans

1 with Disabilities Act in that Anderson was an individual with a disability who has a physical
2 impairment that substantially limits one or more major life activities, has a record of such
3 impairment, and/or was a person who was regarded and/or perceived as having an
4 impairment or disability.

58. Anderson informed Defendant of her medical condition and/or Anderson's medical status.

59. Defendant was aware of Anderson's medical condition.

60. Anderson with or without a reasonable accommodation could perform the essential functions of her job.

61. Anderson was discriminated against and ultimately terminated based upon her actual disability and/or perceived disability in violation of the ADA.

62. Defendant discriminated against Anderson on the basis of her disability by failing to provide Anderson a reasonable accommodation and/or by failing to engage in the interactive process in good faith.

63. Although Defendant could have reasonably accommodated Anderson, Defendant terminated Anderson in violation of the Americans with Disabilities Act.

64. The acts and/or omissions of Defendant and its agents complained of herein are in violation of the Americans with Disabilities Act in that Defendant discriminated against Anderson on the basis of her impairment.

65. Defendant placed an undue burden on Anderson to search for another job to provide for her family.

66. Defendant's requirement that Anderson could only return to work if she was cleared to full duty without restrictions in her original position was a *per se* violation of the Americans with the Disabilities Act.

67. Defendant's requirement that Anderson apply for positions she was qualified for, only to deny her applications with little to no regard of accommodating the lifting requirement of her current position was a *per se* violation of the Americans with the Disabilities Act.

68. Thus, and at all times relevant, Anderson was discriminated against in violation of the Americans with the Disabilities Act.

69. As a direct and proximate result of Defendant's unlawful activity, Anderson has sustained damages in excess of Fifteen Thousand Dollars ($15,000.00).

70. The conduct of Defendant has been malicious, fraudulent or oppressive and was designed to vex, annoy, harass or humiliate Anderson and, thus, Anderson is entitled to punitive damages with respect to her claim.

71. As a result of Defendant's conduct, as set forth herein, Anderson has been required to retain the services of an attorney and, as a direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorney's fees and costs.

**SECOND CLAIM FOR RELIEF**
**RETALIATION**
**42 U.S.C. § 12203 *et seq.* / NRS 613.340**

72. Anderson realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

73. As set forth more fully above, Defendant retaliated against Anderson after she requested a reasonable accommodation in good faith.

74. There exists a temporal proximity in relation to Anderson's engagement in protected activity, and Defendant's resulting acts/omissions relating to Plaintiff including but not limited to the termination of Anderson.

75. This retaliatory action was in response to Anderson's request for reasonable accommodation.

76. Such termination constituted a retaliatory discharge in violation of 42 U.S.C. § 12203 *et seq.* and NRS 613.340.

77. By taking these adverse actions, Defendant has engaged in a discriminatory practice with malice and/or with reckless disregard to Anderson's protected rights. As a result, Anderson has been damaged.

78. As a direct and proximate result of the conduct of the Defendant described hereinabove, Anderson has sustained damages in excess of Fifteen Thousand Dollars ($15,000.00).

79. As a result of Defendant's conduct, as set forth herein, Anderson has been required to retain the services of an attorney, and, as a direct, natural, and foreseeable consequence thereof, have been damaged thereby, and are entitled to reasonable attorneys' fees and costs.

80. Defendant has acted willfully and maliciously, and with oppression, fraud, or malice, and as a result of Defendant's wrongful conduct, Anderson is entitled to an award of exemplary or punitive damages.

**WHEREFORE,** Anderson prays for judgment against Defendant as follows:

1. For general damages in excess of $15,000.00;
2. For special damages;
3. For consequential damages;
4. For punitive damages;
5. For liquidated damages;
6. For injunctive relief; and,
7. Such other and further relief as the Court may deem just and proper.

DATED this 27th day of April 2022.

GABROY | MESSER

By  */s/ Christian Gabroy*
Christian Gabroy, Esq.
Kaine Messer, Esq.
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson Nevada 89012
Tel: (702) 259-7777
Fax: (702) 259-77042834
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff*

# EXHIBIT I

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>[X] FEPA<br>[X] EEOC | Agency(ies) Charge No(s):<br>0405-17-0158L<br>34B-2017-00455 |
|---|---|---|

Nevada Equal Rights Commission _____ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**Ms. Gloria Anderson** | Home Phone (Incl. Area Code)<br>[redacted] | Date of Birth<br>**1975** |
|---|---|---|

Street Address: [redacted]   City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**COX COMMUNICATIONS** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(702) 384-8084** |
|---|---|---|

Street Address: **1700 Vegas Drive, Las Vegas, NV 89106**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address: City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*
[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **12-28-2016**   Latest: **01-03-2017**
[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

The Respondent discriminated against me on the basis of disability. I was denied a reasonable accommodation and then discharged on or about January 3, 2017. I filed my complaint with the Nevada Equal Rights Commission on February 1, 2017.

On or about November 28, 1998, I was hired in the position of Systems Security Administrator. I was eventually promoted to the position of Indirect Account Manager. I was in this same position until my discharge on or about January 3, 2017.

On or about December 28, 2016, my personal physician provided the Respondent medical documentation that I have a weight lifting restriction due to my medical condition.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

**Apr 05, 2017**   [signature]
Date   Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

[Stamp: Received Las Vegas NERC 2017]

Anderson 1078

EEOC Form 5 (11/09)

|  | CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>[X] FEPA<br>[X] EEOC | Agency(ies) Charge No(s):<br>0405-17-0158L<br>34B-2017-00455 |
|---|---|---|---|

**Nevada Equal Rights Commission** and EEOC
*State or local Agency, if any*

On or about January 3, 2017, I returned to work and the Respondent's Human Resources Consultant Kristina Buono informed me the company could not accommodate me based upon my lifting restrictions.

After this meeting, I have not returned to work and my employment status is in limbo. The company has been aware of my lifting restrictions since 2013 and the company is denying I provided this documentation to them.

I believe the Respondent's actions violated the Americans with Disabilities Act Amendments Act (ADAAA) and Nevada State Law.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

**Apr 05, 2017**
Date | Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Anderson 1079

# EXHIBIT II

*Via Email*

December 21, 2021

**Case Name:**
Gloria Anderson
vs.
Cox Communications

**Charge No.:**
NERC: 0405-17-0158L
EEOC: 34B-2017-00455

**Charging Party**
Gloria Anderson

**Respondent**
Cox Communications

## DETERMINATION

Cox Communications (RSP), is an employer, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., and NRS 613.310 and timeliness and all other requirements for coverage have been met.

The above-referenced charge of discrimination was filed by Charging Party (CP), Gloria Anderson, alleging disability discrimination under the Americans with Disabilities Act Amendments Act (ADAAA) and Nevada State Law. The Commission finds PROBABLE CAUSE for disability discrimination, specifically a failure to accommodate. CP's disability is uncontested.

### NERC Finding

Evidence established that CP was hired in 1998 and qualified for her promoted position as Indirect Account Manager in 2007. As part of her duties, CP was an ambassador for Respondent at approximately 90 events per year. CP's ADA-covered condition of rheumatoid arthritis makes it difficult to lift objects over ten (10) pounds. In 2013, CP informed Respondent of her disability and took short term disability leave from October 2016 – Jan 3, 2017. On or around December 28, CP sent Respondent a medical note that she required an accommodation from lifting ten (10) or more pounds due to her disability.

Respondent's Human Resources agent, [Kristina Buono] denied CP's accommodation request, and instead of interacting with CP, informed CP that she would need to apply for another position within the company.

Respondent defends that an interactive process was attempted and that the lifting requirement was an essential duty; however, the Commission noted that at the relevant time period, there

1

was no evidence requiring the lifting of objects [ten or more pounds] for the Indirect Account Manager job description.

Despite Respondent's failure to accommodate the lifting requirement needed (not deemed essential in the job description), CP began applying for other positions in January 2017. In fact, CP participated in formal application and interview processes for several positions between January and March. Respondent did not move CP to any of those positions – all paying approximately $20k less than CP's current position with less qualification demands that CP had already proved she was qualified for. After significant back and forth, CP was informed that her condition required long-term disability. CP applied for several more positions with Respondent in September 2017 but was not hired. In November, CP secured another position with another employer, and Respondent officially terminated CP, December 15, 2017.

NERC is clear in its guidance that the ADA/AA does *not require* an otherwise qualified individual to apply for an available position that can be utilized as an accommodation. Respondent requiring CP to apply for positions she was qualified for, only to deny her applications and with little to no regard of accommodating the lifting requirement of her current position that was not listed as an essential duty/requirement was a failed accommodation attempt.

NERC and the Equal Employment Opportunity Commission (EEOC) are clear in their guidance that employers have a mandatory obligation to continuously work with their employees to find reasonable accommodations that allow the disabled employee to perform essential job functions absent undue hardship.

Respondent failed to adhere to an EEO environment.

## Conciliation

NRS 233.170(2) requires that if the Commission determines that there is reason to believe that violations have occurred, it shall endeavor to eliminate unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violation(s) have occurred, the Commission now invites the parties to join with it in a collective effort toward a just resolution of this matter. NERC is requesting parties make available time via private teleconference to conciliate on **Thursday, January 20, 2022 at 10:00 am.**

In the event the parties refuse to participate in conciliation, the Commission shall close the charge and forward to the Equal Employment Opportunity Commission ("EEOC") for determination as to whether the EEOC will prosecute the matter and/or for the issuance of a Right to Sue Letter.

Anderson 1070

On Behalf of the Commission

Kara M. Jenkins
Administrator

*In light of the global pandemic and maintaining safe practices, conferences will be conducted over the Commission's private conference line; not in-person.*

3

EXHIBIT III

STEVE SISOLAK
Governor

ELISA CAFFERATA
Director

KARA M. JENKINS
Administrator

NEVADA EQUAL RIGHTS
COMMISSION

DETR
Nevada Department of Employment,
Training and Rehabilitation

January 28, 2022

Gloria Anderson

via email only

RE:   Gloria Anderson   vs   Cox Communications
      NERC No. 0405-17-0158L   EEOC No. 34B-2017-00455

Dear Ms. Anderson:

Since Conciliation efforts in your Charge have failed, in accordance with our Work Sharing Agreement with the Equal Employment Opportunity Commission (EEOC), we are forwarding this case to the EEOC for further processing. Thus, the Nevada Equal Rights Commission is closing its files on the Charge.

**EEOC will be contacting you regarding the disposition of this case. In the interim, you may inquire about your case, in writing, through EEOC's Los Angeles District Office located at 255 E. Temple Street, 4th floor, Los Angeles, CA 90012.**

**Right-to-Sue Notice:** This letter constitutes your state Right-to-Sue Notice.

Please be advised that the NERC's determination does <u>not</u> preclude you from filing a lawsuit in state court pursuant to Nevada Revised Statutes (NRS) 613.420.

Section 613.420 of the Nevada Revised Statutes provides in part: "If the Nevada Equal Rights Commission does not conclude that an unfair employment practice . . . has occurred, the Commission shall issue a right-to-sue notice. . . the person alleging such a practice has occurred may bring a civil action in district court not later than 90 days after the date of receipt of the right-to-sue notice…"

NRS 613.430 provides the following timeframes to file in state court, "No action authorized by NRS 613.420 may be brought more than 180 days after the date of the act complained of or more than 90 days after the date of the receipt of the right-to-sue notice…whichever is later. When a complaint is filed with the Nevada Equal Rights Commission, the limitation provided by this section is tolled as to any action authorized by NRS 613.420 during the pendency of the complaint before the Commission."

1820 E. Sahara Avenue, Suite 314 ■ Las Vegas, Nevada 89104 ■ Office (702) 486-7161 ■ Fax (702) 486-7054
www.detr.nv.gov

Anderson 1074

Gloria Anderson vs Cox Communications
NERC No. 0405-17-0158L
EEOC No. 34B-2017-00455
Page 2 of 2

If you should have any questions, you may contact me at (702) 486-7161. Thank you for your time and attention in this matter.

Sincerely,

*Darrell K. Harris (for)*

Andrea Mass
Compliance Investigator II

**NRS  233.190   Confidentiality of information.**
1.  Except as otherwise provided in this section or NRS 239.0115, any information gathered by the Commission in the course of its investigation of an alleged unlawful discriminatory practice in housing, employment or public accommodations is confidential.
2.  The Commission may disclose information gathered pursuant to subsection 1 to:
(a)  Any governmental entity as appropriate or necessary to carry out its duties pursuant to this chapter; or
(b) To any other person if the information is provided in a manner which does not include any information that may be used to identify the complainant, the party against whom the unlawful discriminatory practice is alleged or any person who provided information to the Commission during the investigation.
3.  Except as otherwise provided in subsection 4, the Commission shall disclose information gathered pursuant to subsection 1 to the complainant and the party against whom the unlawful discriminatory practice is alleged if:
(a)  Each has consented to such disclosure; or
(b)  The Commission has determined to conduct a hearing on the matter or apply for a temporary restraining order or an injunction or an action has been filed in court concerning the complaint.
4.   The Commission may not disclose to the complainant or the party against whom the unlawful discriminatory practice is alleged:
(a)  Any information obtained during negotiations for a settlement or attempts at mediating or conciliating the complaint.
(b)  Any investigative notes or reports made by the Commission.
(c)  Any information that may be used to identify a person who provided information to the Commission during the investigation and who has requested anonymity.
5.   Except as otherwise provided in this section or NRS 239.0115, if the Commission's attempts at mediating or conciliating the cause of the grievance succeed, the information gathered pursuant to subsection 1 must remain confidential.
6.  If the Commission proceeds with a hearing or applies for injunctive relief, confidentiality concerning any information, except negotiations for a settlement or attempts at mediating or conciliating the cause of the grievance, is no longer required.
(Added to NRS by 1977, 1606; A 2003, 1330; 2007, 2080)